# In re Schott's Estate

*Morgan, Lewis & Bockius,* and *Marshall A. Coyne,* for co-guardians and accountants.

*John Russell, Jr.,* of *Morgan, Lewis & Bockius,* for Fidelity-Philadelphia Trust Company, claimant.

*David J. Smyth,* co-guardian, p. p.

*Robert T. McCracken,* for amici curiæ.

*George K. Helbert,* for guardian ad litem of possible beneficiaries.

LEWIS and CARROLL, JJ., January 28, 1944.—This case is before us on exceptions to the disallowance of the claim of the Fidelity-Philadelphia Trust Company, co-guardian of the estate of the above-named weak-minded person, for compensation for acting as surety for David J. Smyth, Esq., its co-guardian herein.

The claim, which is represented by two items of $2,887.23 each, for acting as surety over a period of two years, or a total of $5,774.46, was disallowed upon the audit, and it is agreed that our disposition of the exceptions shall be considered as a final decree for purposes of appeal, inasmuch as they have been heard by a majority of the court.

Before the Act of June 24, 1895, P. L. 248, the cost of a guardian's bond was considered as a qualificational prerequisite to his assumption of the trust, and was not, therefore, chargeable against the trust estate as an expense of administration. That act, however, gave a guardian the right to include 'as a part of the lawful expense of executing his trust such reasonable sum paid a company authorized under the laws of this State so to do, for becoming his surety on such bond as may be allowed by the court in which he is required to account, not exceeding however one per centum per annum on the amount of such bond."

From a purely theoretical standpoint, the present claim of the Fidelity-Philadelphia Trust Company for its charges for acting as surety for its co-guardian might be questioned on the ground that it is the guardian who is authorized by the act to ask a credit against the trust estate. The claim, therefore, should properly have been made by the guardian, rather than by the trust company, especially if the surety had been a third person and not a co-guardian. Nevertheless, since the present claimant is also co-guardian and one of the accountants, we think the credit may be claimed by

either of the guardians who are jointly accounting for their administration of the trust. As was held in Voshake's Estate, 125 Pa. Superior Ct. 98, 103: "The guardians execute these duties in their joint capacity; they form but one collective guardian." It is a matter of indifference, therefore, which guardian actually presents the claim, provided the money is properly paid to the surety to whom Mr. Smyth is obligated. The award directly to the corporate co-guardian merely avoids a procedural circuity and insures receipt of the compensation by the person ultimately entitled to it.

Ordinarily, a bank has no power to engage in a surety business and cannot, therefore, become surety for persons acting in fiduciary capacities. Our authority to permit the co-guardian trust company in this case to act as surety for Mr. Smyth is found in the Act of May 15, 1933, P. L. 624, art. X, sec. 1022, which gives banks and trust companies the right to become surety for their co-fiduciaries. This act does not require the court to accept such co-guardians as surety, and the taking of a bond of one co-fiduciary as surety for the other, which, apart from the authority of the act would not be permitted, rests in the discretion of the court. In the present case, the size of the estate made it necessary for us to require security in the sum of $3,000,000. The obligation to require guardians to give security is to be found in section 15 of the Act of June 13, 1836, P. L. 589, relating to lunatics or habitual drunkards. The appointment of guardians is under the Act of May 28, 1907, P. L. 292, 50 PS §961, which provides in section 6:

"The guardian, so appointed, shall have precisely the same powers, and be subject to the same duties, as a committee on lunacy in the State of Pennsylvania."

The Act of 1836, dealing with committees on lunacy, the provisions of which are thus incorporated in the Act of 1907, provides in section 15:

"But before any person appointed committee of the estate of a lunatic, or of an habitual drunkard, shall perform any act as such, he shall give security, in such sum as the court shall direct, with condition for the faithful performance of the said trust, and duly to account, according to law, for all property and funds that may have come into his hands."

In view of these acts, we required the guardians to enter security in the sum of $3,000,000, as to $2,500,-000 of which we permitted the trust company to enter its own bond for itself and also as surety for its co-guardian, but required additional corporate security to be entered for both guardians as to the remaining $500,000. The allowance which is the subject of the present exceptions relates to the premium claimed by the trust company for acting as surety for Mr. Smyth in the amount of $2,500,000, and inasmuch as there can be no question either of the right of the trust company to act as such surety or of the guardian to claim a credit in the account, as a part of the administration expenses, for such reasonable sum as may have been charged by the trust company for his bond the only question to be considered under the present exceptions is the amount that should be allowed as a credit for the two years that the trust company acted as surety for Mr. Smyth.

Considering this question it should be noted that the amount claimed by the trust company is the charge that is customarily made by surety companies acting as surety for guardians in estates the size of the one before us. In this respect the trust company's claim cannot be said to be unreasonable. There are other considerations, however, which we think require a re-

duction of the allowance claimed by the guardian. The claim is the same as the charge that would be made by an ordinary bonding company for becoming surety for both guardians. The trust company has entered its own bond for itself, and, insofar as the amount of its charge represents what would be ordinarily charged by an outside bonding company for becoming surety for the proper performance by the trust company of its own share in the administration of the trust, the claim cannot be allowed. It can make no claim for entering its own bond, and the risk that an outside surety company would take in bonding both guardians as a unit is obviously greater than that assumed by the trust company in insuring only the faithful performance of the trust by its co-guardian, Mr. Smyth. Since co-guardians must act as a unit, and neither can assume any of the fiduciary responsibilities of the other, as was held in Voshake's Estate, supra, this still further tends to diminish the risk taken by a trust company in becoming surety for its co-guardian. This does not mean that a corporate guardian assumes no additional risk in acting as surety for its co-guardian, for a court, in fixing a surcharge, would, in many instances, determine whether a loss was due to the joint action of the fiduciaries or to the separate action of one of them, and would fix liability accordingly. A co-fiduciary therefore does assume a responsibility beyond that assumed by the entry of its bond for itself, and hence it is entitled to make a reasonable charge for so doing.

The very position of co-fiduciary, which the Fidelity-Philadelphia Trust Company occupies in the matter before us, coupled with the necessity for co-guardians to act together as a unit, places it in a much better position to protect itself than that occupied by an outside surety and thus further reduces the risk involved in its surety bond. The amount to be allowed a co-

fiduciary surely must depend largely upon all the conditions surrounding the trust and the administration of it, and no general rule should be laid down fixing an arbitrary percentage of the usual cost of an outside surety bond as that to be allowed a co-fiduciary. Considering all the facts in the present case, therefore, we are of opinion that a reasonable allowance as administration expenses to the present claimant for acting as surety for its co-guardian would be the sum of $1,500 per year, or a total allowance of $3,000. The exceptions are therefore sustained, and the claim of the Fidelity-Philadelphia Trust Company is allowed in the sum of $3,000.

This disposes of the exceptions before us. There is one other matter, however, which we deem proper to comment upon at the present time. While our power under the Act of 1933 to permit a bank to act as surety for a co-fiduciary is clear, we think the practice of permitting such bonds to be entered is not, as a general rule, advisable. To permit one co-fiduciary to act as surety for the other deprives the estate of much of the benefit and protection of an outside surety which the Act of 1836 was manifestly intended to secure to such trust estates. Instances are not wanting, particularly in the last 10 or 15 years, in which banks have failed while acting as surety for co-fiduciaries. In such cases the trust estates would have been completely without protection had there been mismanagement of them, for a fiduciary's own bond furnishes no greater protection to the estate than its liability for mismanagement apart from its bond. When, therefore, the fiduciary of the same estate is permitted, in addition to giving its own bond for itself, to become surety for its co-fiduciary, the protection of a surety bond intended by the Act of 1836 is greatly weakened, and might well, in unfortunate circumstances, become

completely evanescent. It is therefore the general policy of this court not to permit co-fiduciaries to become surety one for the other, save in exceptional circumstances and for special, overpowering, and compelling reasons. We see nothing in the circumstances of the present trust to justify the continuance of the surety bond of this corporate co-fiduciary. The estate is more than ample to meet all the necessities of the ward, and there is no question of necessary economy to move us to depart from our general rule. It is therefore directed that Mr. Smyth, the co-guardian, shall enter separate corporate security, in the amount now being given for him by his co-guardian, and, upon the entry of such security, the liability of the Fidelity-Philadelphia Trust Company on its bond given for him shall be terminated. In making this order we desire to expressly declare that our action is neither intended to, nor should, be taken as an indication of dissatisfaction with the conduct of this guardianship by the trust company nor of any want of confidence on our part in its integrity and responsibility, nor in its suitability to be accepted, in proper cases, as surety for its co-fiduciaries.